IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MARK MULLER                                                  PLAINTIFF


VS.                                    CIVIL ACTION NO. 1:17cv339-LG-RHW

MISSISSIPPI POWER COMPANY,
HARDY WHEELESS,
CHARLES E. SMITH,
and JOHN/JANE DOES 1-10

                                                              DEFENDANTS

**FIRST AMENDED COMPLAINT**

**(JURY TRIAL DEMANDED)**

COMES NOW the Plaintiff, Mark Muller, and files this action to recover actual and punitive damages for retaliatory discharge under Title VII, age discrimination under the ADEA, and for intentional infliction of emotional distress, and in support of his First Amended Complaint against the Defendants, states as follows:

**Parties**

1.      The Plaintiff, Mark Muller ("Muller"), is an adult resident citizen of Harrison County, Mississippi. He resides at 15565 Shriners Blvd., Biloxi, Mississippi 39532.

2.      The Defendant, Mississippi Power Company, is a Mississippi corporation, authorized to do and doing business in the State of Mississippi.  It is a subsidiary or affiliate of Southern Company.  Mississippi Power may be served with process of this Court by serving its registered agent, Vicki Pierce, at Mississippi Power's corporate offices located at 2992 W. Beach Blvd., Gulfport, Mississippi 39502.

3.      The Defendant, Hardy Wheeless, is an adult resident citizen of Georgia who

can be served with process at his place of employment, Georgia Power Company, 241 Ralph McGill Blvd. NE, Bin #10090, Atlanta, GA   30308-3374.

4.      The Defendant, Charles E. Smith, is an adult resident citizen of Mississippi who can be served with process at his residential address at 2601 Roy Cumbest Road, Moss Point, MS   39562.

5.      The Defendants John/Jane Does 1-10, are individual persons or entities who, through their employment or affiliation with Mississippi Power, may have participated in or otherwise be liable for the wrongful conduct alleged herein.   Their identities are presently unknown to Muller, but Muller will amend his First Amended Complaint and properly serve them with process if and when their identities are discovered by him.

## Jurisdiction and Venue

6.      This Court has federal question jurisdiction under 28 U.S.C. 28 U. S. C. § 1331. This is a suit in equity authorized and instituted pursuant to 42 U.S.C. § 2000e, *et seq.* ("Title VII").   This Court has civil rights jurisdiction under 28 U.S.C. § 1343, and has jurisdiction pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). This Court's jurisdiction is invoked to secure protection of and to address deprivation of rights secured by Title VII and/or the ADEA, providing for declaratory, injunctive, and other relief to which Muller is entitled as a result of Mississippi Power's violation of his rights under Title VII and/or arising from employment discrimination by Mississippi Power based upon Muller's age.   The Court is entitled to exercise pendant or supplemental jurisdiction over the claims against the individual defendants.

7.      Venue is both proper and convenient in this district pursuant to applicable law.

2

## **Facts**

8.     Defendant Mississippi Power is a corporation engaged in and affecting commerce and is currently doing business in the State of Mississippi.

9.     Mississippi Power is an employer as that term is defined under the ADEA, 29 U.S.C. § 630(B) and as defined by 42 U.S.C. § 2000e(b).

10.    Muller at all pertinent times was employed by Mississippi Power until he was wrongfully terminated on or about July 28, 2017. The illegal and adverse termination actions occurred in the State of Mississippi.

11.    Muller began his employment with Mississippi Power in 1982 as "helper" in the Operations Department at Plant Watson, located in Gulfport, Mississippi.

12.    Through years of service, he worked his way through virtually all classifications of the Operations Department.   He ultimately was promoted to Operations Team Leader in July, 2010.   Operations Team Leader is a first level supervisor position. Muller's promotion to this level was a testament to his hard work, his value, his persistence, his skill, and his loyalty.   In his role as Operations Team Leader, Muller worked for the next seven (7) years at Plant Watson in a supervising role for plant operations, and he led operating crews to maximize plant reliability and efficiency.   He also was charged with complying with extensive safety, regulatory, and environmental protocols.   In addition, he provided coaching and training to team members and worked tirelessly in plant performance and management, including oversight of equipment and methodology.   As an Operations Team Leader at Plant Watson, Muller worked to oversee a crew of ten (10) employees for those seven (7) years.

13.    Until the events now complained of herein, Muller had never been the

3

subject of any warnings, reprimands, write-ups, or any other kinds of disciplinary actions. To the contrary, Muller had been a model employee.   He had created on his own initiative the "Needs Book," a process guide for use in employee work schedule protocols, and it is still used to this day.   He had been asked to compile a comprehensive training manual for Substitute Team Leaders, which he did.   He had conducted training classes and was selected for the first MPC Leadership Development Program, which trained company leaders.   Muller similarly had received numerous safety awards.   Muller had even served as Team Leader of the first female employee promoted to CBTO position at Plant Watson.   Muller was an exemplary employee, routinely promoted, and routinely praised for his personal integrity and work ethic.

14.    After thirty-four (34) years at Plant Watson, a downsizing occurred precipitated by the transition of Plant Watson from coal to gas.   In October of 2016, Muller agreed to transfer his employ to Plant Daniel located in Moss Point, Mississippi.

15.    This transfer to Plant Daniel occurred in November, 2016.   Muller initially participated in training and then, on January 6, 2017, he was assigned an operations crew and directed to work with a Team Leader for additional training with respect to Plant Daniel practices and procedures.

16.    On March 3, 2017, Muller was assigned Team Leader of E crew.

17.    Muller immediately noticed that the female members on his crew were subjected to an inordinate level of scrutiny by Muller's supervisor, Hardy Wheeless, and by another Team Leader, Skipper Smith.

18.    This behavior by Wheeless and Smith was overt, consistent, and identifiable.

4

19.     It was clear that the discriminatory and disparate behavior was aimed at repressing opportunity for female employees, and that fact became exceedingly clear during incidents which will be described *infra*.

20.     The attitude of discrimination at Plant Daniel was pervasive, and it was not limited to Wheeless and Smith.   Mississippi Power promoted this atmosphere by permitting leaders like Wheeless and Smith to act illegally while knowing of such behavior. The plant's reputation for this environment was known in the community and therefore known to Mississippi Power.

21.     Muller, however, a Team Leader himself, who had two female employees on his crew, did not believe principally in disparate or discriminatory treatment of female employees.

22.     Muller's failure to accept and condone discriminatory behavior unlawful under Title VII got the attention of the Wheeless and Smith.   Muller specifically opposed practices made unlawful by Title VII whereas Wheeless and Smith engaged in such practices and demanded that Muller do the same.   When Muller refused, these two individuals set their sights on, first, testing Muller's non-conformity with promoting and enforcing their discriminatory directives, and, ultimately, eliminating his non-conformity when he refused to bend and adopt their illegal behavior.   Wheeless and Smith engaged in disparate and discriminatory treatment of female employees, including:  disparately refusing to promote female employees; disparately demoting female employees; disparately treating female employees differently than male employees in performance reviews; and disparately treating female employees differently than male employees in disciplinary matters.

5

23.     Muller's wrongful and illegal termination was triggered when he opposed Wheeless's and Smith's predatory, harassing, and discriminatory actions against a female employee on Muller's crew.   Wheeless had demoted this female employee, wrongfully, on false charges and pretenses.   Muller stood against this illegal behavior and checked it as set forth herein, which caused Wheeless and Smith to seek to eliminate Muller through retaliatory discharge, which plan they accomplished on July 28, 2017.

24.     The female employee had been a substitute Team Leader but Wheeless had demoted her from that position on the false basis that she had abused sick leave and vacation time.   This demotion was ill-founded given that sick leave and vacation are part of employee benefit packages and are objectively quantifiable.   In fact, this female employee had sick leave and vacation hours remaining at the time she was demoted for purportedly abusing her own benefits, which had not been fully used.   Muller became aware of this situation and opposed the demotion because it constituted disparate and discriminatory treatment of his female crew member.

25.     This female employee subsequently reported for work one day wearing a boot prescribed by a doctor.   She had suffered a minor injury that would not inhibit her ability to work.   Muller, as per usual policy and procedure, approved her for work in the boot because this was normal protocol, particularly given that no units were "on" that evening.   Muller's decision was made as Team Leader of this crew member and also after consultation with the company-employed Disability Management RN.   In short, it was a well-informed, correct decision by the correct person to make the decision.

26.     Wheeless took issue with permitting this female employee to work, even though the same allowance would have been permitted for a male employee.

6

27.     It was particularly important that this female employee be permitted to work because of Wheeless' previous inaccurate, unlawful, and unfair accusations that she had been abusing sick leave and vacation, and the subsequent unfair demotion as a result.

28.     Muller, the Team Leader for this female employee opposed the demotion and he opposed preventing her from working because Wheeless would have used the situation as false justification to validate the demotion.   Because Muller opposed this illegal behavior, Wheeless' instigated a plan for retaliatory termination.

29.     That is, because Muller treated the female employee the same as he would have treated any male employee, and because of Wheeless' bias and discriminatory actions against this female employee, Wheeless undertook a mission to remove Muller as a result of his actions opposing Wheeless' discriminatory and illegal behavior.

30.     As a result, Wheeless began to build a case against Muller on false pretenses, first accusing Muller of "falsifying time," which was a terminable offense.   The claim of Wheeler was patently false.   This was the first time in seven (7) years as a Team Leader that any manager had questioned Muller about his work ethic or time.

31.     Wheeless' accusation against Muller was pretextual and motivated by Muller's stance against Wheeless' discriminatory behavior against female employees, which extended not only to individual incidents such as the one involving the female employee working while in a boot, but also permeated into the fabric of the entire plant.

32.     Wheeless' was seeking to protect his practice of denying promotions to female employees and treating them different than male employees.   Wheeless' discriminatory behavior was well-known to Mississippi Power.   His behavior was tolerated and even encouraged in that Mississippi Power refused to address it and abate

7

it.   The tolerance of Wheeless' behavior amounts to intentional misconduct by Mississippi Power.

33.   Wheeless' opposition to the female employee working was a blatant act of discrimination against the female employee designed to validate his (inaccurate) accusation that she was abusing her employee benefits, which she was not.   In turn, Wheeless' actions were designed to repress that particular female employee's opportunity for advancement in the company and validate the unjustified demotion that he had caused to occur as to this female employee.

34.   Concomitantly, Wheeless' blatantly false attack on Muller in accusing him of falsifying his time was motivated by Wheeless' own discriminatory motives aimed at female employees.   Wheeless' goal was to impeach and discredit Muller, so that he could continue his repressive and discriminatory management style against female employees, which Muller had opposed.

35.   Wheeless persistently treated this female employee differently than he treated male employees similarly situated, and attempted to repress her for promotion, in order to validate keeping female employees in lower wage jobs based on pretextual reasons (through his disparate treatment of females).

36.   Muller had upset the Wheeless applecart and years of illegal activity practice by opposing this discriminatory behavior.   Wheeless retaliated.

37.   In a second incident involving second female employee, Muller graded one of his female crew members has having "met expectations" with respect to job performance.

38.   However, Smith, a Team Leader of a different crew, questioned Muller's

8

opinion as to this performance grade.   He falsely accused the female employee of not adequately performing current job duties, even though he was not her Team Leader. Muller had never been confronted with a situation where the Team Leader of one crew challenged the grade of a member of a different crew in this manner.

39.   But Smith's actions were consistent with the overall pattern and pervasive atmosphere of discrimination and disparate treatment of women at this plant by Smith and Wheeless.

40.   Wheeless rejected Muller's grade and accepted the opinion of the non-team leader, Smith.   Wheeless then ordered a "walk down" of this female employee crew member.   This walk-down was an unwarranted and unsubstantiated disciplinary action based on false premises and motivated by illegal and discriminatory actions, which Muller opposed to Wheeless and Smith.

41.   This event constituted the second disparate and discriminatory act against a female on Muller's crew within just a few months of his appointment as Team Leader of this crew.

42.   This event and disciplinary act against this female employee was also inconsistent with Mississippi Power's standard procedure in that concerns about a crew member are supposed to be relayed to a Team Leader prior to consistency meetings. Smith did not follow this protocol, and Wheeless short-circuited this procedure by rejecting Muller's passing performance grade in favor of a different Team Leader's unsubstantiated non-passing grade.

43.   No similar events occurred regarding disparate treatment of similarly situated male employees on Muller's crew.   Nor was there legitimate justification for this

9

non-passing grade. Rather, this behavior was all pretextual, aimed at repressing the promotion of female employees within the company and all designed to demote and suppress advancement by females in the company.

44. Wheeless and Smith, after this second incident, accused Muller of "breaching confidentiality" when he discussed with the female employee the "walk down" procedure to which she had been subjected by Wheeless and Smith. Wheeless' accusation of a confidentiality breach was pretextual, and part of his retaliatory plan to eliminate Muller for opposing his pattern and practice of discrimination against female employees, which included unjustified and false accusations and unfair disciplinary actions all designed to suppress advancement by females in the company and all designed to demote and suppress female advancement in the company.

45. Muller told Wheeless upon being accused of this confidentiality breach that the two female crew members on his team were being targeted and harassed by both Wheeless and Smith, and that as Team Leader responsible for the development of his crew, he wanted the record to be clear on this point. Muller's statements were an opposition to disparate, discriminatory treatment of female crew members on his crew.

46. In the course of accusing Muller of breaching confidentiality, Wheeless then tried to coerce Muller to sign a report that was false. The document would have constituted an admission by Muller that he had acted with neglect and carelessness, as well as incompetence and inefficiency. Muller refused to adopt or endorse these statements which were aimed at justifying the illegal behavior of Wheeless and Smith and at falsely undermining Muller because Muller had opposed Wheeless' and Smith's discriminatory behavior.

10

47.     When Muller refused to participate in discriminatory behavior against his two female crew members by enforcing the illegal and disparate treatment of them, and instead opposed Wheeless' disparate, discriminatory behavior, Wheeless then placed Muller on forced administrative leave on or about July 12, 2017.   The forced administrative leave of Muller was triggered by Muller's refusal to enforce and adopt the discriminatory behavior of Wheeler and Smith.   The forced leave continued until July 28, 2017.

48.     On July 28, 2017, Wheeless presented Muller with the choice to resign or be terminated.   This action was undertaken due to Muller's refusal to participate in the discriminatory behavior and Muller's stance in opposition to behavior that was discriminatory and illegal.   Muller refused to resign under the false pretenses of accusations that were untrue, so Mississippi Power terminated him.

49.     Every reason given by Mississippi Power for the termination was false, and even if the false reasons given for the termination had been true, they were not terminable offenses.   Every action taken by Wheeless and Mississippi Power in firing Muller was pretextual, targeted, illegal, inequitable, and unjustifiable.

50.     Mississippi Power's endorsement of Wheeless' and Smith's illegal behavior amounts to intentional misconduct warranting the imposition of punitive damages.

51.     Termination was based upon Muller's actions in reporting that two female employees were being targeted, and his refusal to participate in and condone such unlawful behavior, and his opposition to illegal, discriminatory conduct, as set forth herein.

52.     The termination was further based further upon Muller's age (62) in that a younger person in Muller's position would have been more susceptible to accepting and

implementing the discriminatory behavior as opposed to refusing to implement the unlawful discrimination.

53.     On information and belief, and also out of accord with standard procedure, Muller's termination occurred before Human Resources completed its ongoing investigation into these matters. That investigation had not concluded at the time that Muller was discharged, which is yet further evidence that the company's behavior was unlawful and that its alleged process was pretextual.  Mississippi Power's refusal to conclude its investigation before terminating Muller was yet another egregious and intentional act.

54.     Muller's suspension without pay and, ultimately, firing and termination intentional and willful and/or malicious.  Wheeless and/or Smith acted in concert with each other and/or Mississippi Power in suspending and ultimately firing Muller, and their conduct was done with an unlawful purpose of causing damages to Muller and/or without right or justifiable cause and/or with reckless disregard for Muller's employment relationship with Mississippi Power.  Such actions of the individual defendants were malicious, without justification, intentional, and aimed at harming Muller.

55.     Muller filed a Charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by Mississippi Power on the basis of retaliatory discharge and other actionable offenses.   The EEOC charge includes ADEA.   The date of issuance of the Notice of Suit Rights from the EEOC is September 13, 2017.

56.     The EEOC issued Muller a Notice of Right to Sue.

### Count I:      Retaliatory Discharge (Title VII) 28 U.S.C. § 2000e

57.     Muller re-alleges the allegations set forth in Paragraphs 1 - 56 above.

12

58.     On or about July 28, 2017, Mississippi Power wrongfully terminated Muller's employment.   The purported basis of the termination was pretextual, illegal, and inequitable.

59.     The termination was unlawful and premised upon discrimination based upon gender for the reasons set forth herein.

60.     As a result of Mississippi Power's discriminatory acts and wrongful termination, Muller has suffered lost income, mental anxiety and stress, and he is entitled to actual and compensatory damages, along punitive damages for willful and intentional violations of Title VII.

## Count II:     Age Discrimination, 29 U.S.C. § 623

61.     Muller re-alleges the allegations set forth in Paragraphs 1 - 60 above.

62.     On or about July 28, 2017, Mississippi Power unilaterally and wrongfully terminated Muller's employment.   At the time of the termination, Muller was sixty-two (62) years of age.   The purported basis of the termination was pretextual, illegal, and inequitable.

63.     Muller's termination was without justification.   As a result of the wrongful termination, Muller has been deprived of his earnings, benefits,

64.     Upon information and belief, Mississippi Power employed a younger employee to take over the job duties of Muller.

65.     The unlawful employment practices alleged herein were committed within the State of Mississippi.

66.     The age discrimination against Muller was willful.

67.     To the extent Mississippi Power had any neutral criteria to terminate Muller,

13

it had a disparate impact because of Muller's age and was not based on reasonable factors other than age.

68.    As a result of Mississippi Power's discriminatory acts and wrongful termination, Muller has suffered lost income, mental anxiety and stress, and he is entitled to actual and compensatory damages, along with liquidated damages for willful age discrimination.

### Count III: Gross Negligence and Punitive Conduct, 42 U.S.C. § 1981

69.    Muller re-alleges the allegations set forth in Paragraphs 1 - 68 above.

70.    The Title VII violations of the defendant were intentional violations.

71.    As a result, Muller is entitled to punitive damages in an amount to be proved at trial.

### Count IV:   Intentional Infliction of Emotional Distress

72.    Muller re-alleges the allegations set forth in Paragraphs 1 – 71 above.

73.    The individual defendants, Wheeless and Smith, participated in directed, intentional, illegal, predatory, and malicious acts against Muller as set forth herein, intentionally designed to cause harm, distress, damage, and destruction to Muller.

74.    Muller has suffered damages as a proximate result and is entitled to compensatory and punitive damages against the individual defendants in amounts to be determined by a jury and proved at trial.

### Count V:   Damages

75.    As a result of the wrongful discharge and termination from employment by Mississippi Power, Muller has suffered actual and consequential damages, including loss

of pay and benefits, past and future, and he is entitled to compensation. These damages include, but are not limited to, the following:

a.    Salary

b.    Bonus

c.    401k (company match)

d.    Health insurance

e.    Loss in post-retirement benefits as to pension and social security benefits

f.    Loss in spousal social security benefit

76.    The total compensatory losses for these categories of economic damages is estimated presently to be at in excess of $935,000 and/or an amount to be proven at trial.

77.    Mississippi's Power's discriminatory acts and wrongful termination have further caused substantial mental anxiety and stress, for which Muller is entitled to recovery in an amount to be determined by the jury.

78.    The acts and conduct of Mississippi Power were malicious, and/or willful, deliberate, grossly negligent, and without regard for the rights of Muller.  Alternatively, Mississippi Power's wrongful termination of Muller is in violation of public policy.   Muller is entitled to punitive damages in an amount to be proven at trial.

79.    The acts of the individual defendants, Wheeless and Smith, were designed to and did cause severe emotional distress, and Muller demands recover for same in an amount to be determined by a jury.

80.    The acts of the individual defendants, Wheeless and Smith, were intentional and malicious, and Muller demands punitive damages against them in an amount to be

15

proven at trial.

      *Wherefore, premises considered*, the Plaintiff, Mark Muller, respectfully requests a trial by jury and seeks an award of compensatory and punitive damages against all Defendants as more fully set forth above, as well as all costs of this action, pre-judgment and post-judgment interest, and such other relief to which he may be entitled in the premises.

      Dated:   January 30, 2018.

                Respectfully submitted,

                MARK MULLER, PLAINTIFF


              By: */s/ C. Maison Heidelberg*         
                C. Maison Heidelberg (MB: 9559)


OF COUNSEL:

WATSON HEIDELBERG JONES PLLC
2829 Lakeland Drive, Suite 1502
Flowood, MS 39232
Office . 601-939-8900
Fax . 601-932-4400
mheidelberg@whjpllc.com
gkennedy@whjpllc.com

16