IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**MARK MULLER**                                                                                      **PLAINTIFF**

v.                                                                              CAUSE NO. 1:17CV339-LG-RHW

**MISSISSIPPI POWER COMPANY**
**and JOHN/JANE DOES 1-10**                                                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOOTING PLAINTIFF'S MOTIONS TO STRIKE

**BEFORE THE COURT** is the [88] Motion for Summary Judgment filed by the defendant, Mississippi Power Company, as well as the [92] Motion to Strike Exhibit M and the [100] Motion to Strike Third Declaration of Wendy Fayard filed by the plaintiff, Mark Muller, in this employment discrimination case. The parties have fully briefed the Motions. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that Mississippi Power's Motion for Summary Judgment should be granted, and Muller's Motions to Strike are moot.

## BACKGROUND

In 1982, the plaintiff, Mark Muller, began working for Mississippi Power at Plant Watson in Gulfport, Mississippi. In October 2016, Mississippi Power transferred Muller to Plant Daniel in Moss Point, Mississippi, where he served as the team leader for Crew E. Muller claims that his supervisor, Hardy Wheeless, and another team leader, Charles "Skipper" Smith, treated two females on Crew E — Wendy Fayard and Preschia Cumbest —unfairly due to their gender. He cites

four incidents in support of this claim. First, before Muller had begun working at Plant Daniel, Wheeless removed Wendy Fayard from the substitute team leader position because Wheeless believed Fayard had abused Mississippi Power's sick leave policy. Second, Wheeless tried to stop Fayard from working her shift when she arrived wearing a protective boot until she provided documentation of her medical restrictions from her physician. Third, in another incident that occurred before Muller worked at Plant Daniel, Preschia Cumbest and some male members of Crew E were disciplined due to a 2016 spill that occurred during their shift, but Skipper Smith's crew was not disciplined for another spill. Finally, after Smith questioned the competence of Cumbest during the June 2017 pre-consistency meeting[1], Wheeless required Cumbest to perform a walk-down[2] to test her abilities.

After the June 2017 pre-consistency meeting, Muller told Cumbest that she was going to be required to perform a walk-down, and she correctly guessed that Smith was the person who had questioned her abilities during the meeting. Cumbest became upset and told her father, who worked in another part of the plant, that Smith had singled her out during a pre-consistency meeting. Wheeless met with Cumbest and her father in an attempt to calm them down. He then confronted Muller because discussions held at pre-consistency meetings are

---

[1] In bi-annual pre-consistency meetings, the plant's team leaders and operations manager meet to discuss each employee's performance. (Def.'s Mot. Ex. C, at 72-73, Ex. F, at 61-62, ECF Nos. 88-3, 88-6.)
[2] Walk-downs are performance evaluations in which a manager shadows the employee as the employee performs her job duties in order to recognize any gaps in training or to evaluate whether the employee should be promoted. (Def.'s Mot. Ex. C, at 96, ECF No. 88-3; Def.'s Mot. Ex. H, at 14, ECF No. 88-8.)

confidential. (Def.'s Mot. Ex. C, at 109-11, 117, ECF No. 88-3.) According to Wheeless, Muller admitted to discussing the pre-consistency meeting with all of Crew E. (*Id.* at 146.) Wheeless also claims that Muller became loud and disrespectful when Wheeless confronted Muller about the breach of confidentiality, so Wheeless sent Muller home for the day. (*Id.* at 118, 146-47.) Wheeless claims that Muller did not make any allegations of gender discrimination during this conversation. (*Id.* at 150.)

When Muller returned to work on July 11, 2017, Wheeless met with him and issued a Report of Disciplinary Action (RODA) suspending Muller for one day without pay for breach of confidentiality as well as facilitating "ongoing discussion regarding disagreement with" discipline issued to Crew E regarding the spill in 2016. (Def.'s Mot. Ex. 4 to Ex. C, ECF No. 88-3). Wheeless attempted to read the RODA to Muller, but Wheeless claims Muller repeatedly interrupted him. (Def.'s Mot. Ex. C, at 140-41, ECF No. 88-3.)

After receiving the RODA from Wheeless, Muller approached Nik Budney, the plant manager. Budney claims that Muller threw the RODA on his desk and began shouting that Wheeless and Smith were the problem and should be fired. Muller also informed Budney that Wheeless and Smith were requiring a walk-down and that Cumbest was not the problem. (Def.'s Mot. Ex. H, at 10-12, ECF No. 88-8.) Muller then walked out and slammed the door to Budney's office. (*Id.*) Budney claims that it was difficult to follow what Muller was saying, but Muller did not tell him about any gender discrimination. (*Id.* at 10-12, 47.) Muller admits that he

discussed the pre-consistency meeting with Cumbest, but he denies that he breached confidentiality or acted angry or disrespectful in his meetings with Wheeless and Budney. (Def.'s Mot. Ex. A, at 134, 136, 139, ECF No. 88-1.)

Muller next went to Mississippi Power's Corporate Concerns[3] office in Gulfport, Mississippi, where he met with Frank Dawson, Brigham Young, and Vicki Pierce and told them his concerns about the way Cumbest and Fayard were treated. (*Id.* at 110-11.) Pierce perceived Muller's concerns to involve possible gender discrimination, but Dawson did not. Young's testimony regarding this meeting has not been provided to the Court.

Pierce also contacted the plant's human resources representative, Ginger Lehman, and asked her whether human resources was getting ready to terminate Muller. (Def.'s Mot. Ex. R at 23, ECF No. 88-18.) Due to this conversation, Lehman assumed that Muller had filed a claim, but she did not know the details of the claim. (*Id.*) Lehman then told Wheeless that Muller had filed some form of complaint with Employee Concerns. (*Id.* at 24.)

Pierce, Young, and Dawson called Employee Relations[4] Coordinator Jennifer Krohn to inform her of Muller's accusations and the punishment imposed on him. (Pl.'s Mot. Ex. 7, at 45-46, ECF No. 90-7.) Pierce also notified Mississippi Power's

---

[3] The corporate concerns office handles employee claims so that these claims can be investigated separately from human resources matters in an unbiased manner. (Def.'s Mot. Ex. I, at 18, ECF No. 88-9.)

[4] Employee relations is Mississippi Power's human resources department. (Def.'s Mot., Ex. Q, at 6, ECF No. 88-17.)

-4-

Vice President of Generation Allen Reaves of Muller's gender discrimination allegations. (*Id.* at 34, 41.)

Pierce wrote the following notes concerning her conversations with Lehman, Krohn, and Reaves:

> Apparently, Ginger [Lehman] called Allen [Reaves] or [Hardy Wheeless], so now they want to terminate [Mark Muller]. [Jennifer Krohn] told them not to do that. Allen [Reaves] finally called me back. He was short and aggravated. Said he had a whiner down here and 250 up there that need a job, and this guy needs to be fired. I said we have four people saying four different things. And now we also have a concern about two women being targeted. . . . Are they retaliating against this guy for coming to us because now they are suspending him until Monday without pay[?] What happened from yesterday to today, that warrants a suspension until Monday[?]

(*Id.* at 45-46.) Pierce explained that she did not know for certain that Lehman had called Reaves or Hardy Wheeless; she was just assuming that Lehman had done so. She further explained:

> My concern was that the day before Mr. Muller said he was being suspended, and then we find out that he's going to be terminated. So I was worried that somebody had communicated out of school[,] and this might be a case of retaliation. We confirmed that there had not been any communication between people. That was my concern.

(*Id.* at 40.) She could not recall who the four people were who were saying four different things, but it may have been Muller, Reaves, Lehman, and Krohn. (*Id.* at 46-47.)

Dawson investigated Muller's claims by interviewing Kim Washington, a member of the plant leadership team who was present at the meetings Muller referenced. (Pl.'s Mot. Ex. 10, at 32, ECF No. 90-10.) Washington stated that she had not seen any unjust or unwarranted actions taken against Cumbest or Fayard.

(*Id.*)  Dawson also reviewed the employee evaluations concerning Muller's team. (*Id.* at 28.)  He did not interview Cumbest or Fayard. (*Id.* at 32.)  After he concluded his investigation, he met with Pierce and Shelly Rice[5] to discuss his findings, and they determined that there was no evidence of unfair treatment that would justify interviewing Fayard and Cumbest. (*Id.* at 34.)  They decided that if either Cumbest or Fayard came forward with a specific allegation, an investigation would be conducted. (*Id.* at 37.)

On July 18, 2017, Employee Relations Manager Norman Collins sent an email to Reaves that contained Muller's vacation balance, the date on which Muller began working for Mississippi Power, and Muller's birth date, including a notation that Muller would turn 62 in September. (Pl.'s Resp. Ex. 14, ECF No. 90-14.) Reaves replied that Muller had taken a lot of vacation time, and Collins responded, "Typical of a lot of the folks at the plants.  I really think he's been unhappy with the move and has been thinking retirement for a while." (*Id.*)

When Collins was asked about this email exchange at his deposition, he testified, "[W]hen it is determined that this person needs to be separated from the company, we look at the easiest way for – that we can do that to ease the pain of the employee." (Def.'s Mot. Ex. Q, at 36, ECF No. 88-17.)  Collins explained that he wanted Reaves to know that Muller was close to his sixty-second birthday and the amount of vacation time available, so that they could make Muller an offer if he

---

[5] Rice is the manager of employee concerns, and she reports to Pierce. (Def.'s Mot., Ex. Q at 41, ECF No. 88-17.)

chose to resign in lieu of termination. (*Id.* at 36-37.) Reaves elaborated that "the question was could we bridge him to age 62 with vacation or grant him additional vacation to carry him to some retirement date." (Def.'s Mot. Ex. E, at 58, ECF No. 88-5.) Reaves testified that he was not willing to grant this accommodation to Muller. (*Id.*) Collins testified that these emails were sent after the decision to terminate Muller had been made. (Def.'s Mot. Ex. Q, at 37, ECF No. 88-17.)

Mississippi Power terminated Muller on July 28, 2017. (1st Am. Compl. 11, ECF No. 2.) In an interrogatory response, Mississippi Power stated that the following individuals were involved in the decision to terminate Muller: Wheeless, Budney, Lehman, Krohn, and Collins. (Def.'s Mot. Ex. D, at 6-7, ECF No. 88-4.) Reaves and Chief Executive Officer Anthony Wilson reviewed and approved the decision. (*Id.*) Having put her prior concerns about retaliation and gender discrimination to rest, Pierce from Corporate Concerns told Reaves that the termination could proceed. (Def.'s Mot. Ex. E, ECF No. 88-5; Def.'s Mot. Ex. J, at 89, ECF No. 88-10.)

Reaves testified that Muller was terminated for disclosing confidential information and for hostile, threatening behavior. (Def.'s Mot. Ex. E, at 25, ECF No. 88-5.) In addition, Reaves noted that Muller had lost the trust of Muller's team as well as the plant's leadership team. (*Id.*) Budney explained that "[w]hen [Muller] shared confidential information about an employee, he created a work environment that was distracting, which created an unsafe work environment

-7-

because the distraction was to the point where the entire staff was talking about it." (Def.'s Mot. Ex. H, at 41, ECF No. 88-8.)

Muller filed this lawsuit asserting the following claims against Mississippi Power: retaliatory discharge in violation of Title VII, age discrimination, and gross negligence/punitive conduct. He seeks actual and consequential damages, punitive damages, and damages for emotional distress. Mississippi Power filed the present Motion seeking summary judgment as to all of Muller's claims.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

### I. Title VII Retaliation

Title VII prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice" under Title

VII. 42 U.S.C. § 2000e-3(a).  A plaintiff may prove retaliation with either direct or circumstantial evidence.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

Muller argues that he has presented direct evidence of discrimination, because Mississippi Power's Vice-President and Senior Production Officer Allen Reaves told Mississippi Power's Compliance Officer Vicki Pierce that "he had a whiner down here and 250 up there that need a job, and this guy needs to be fired." (Pl.'s Mot. Ex. 7, at 45-46, ECF No. 90-7.)  The parties dispute whether Reaves' statement constitutes direct evidence of discrimination.

### A. Direct Evidence

"In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face."  *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018).  Thus, "[d]irect evidence is evidence, which, if believed, proves the fact [of retaliation] without inference or presumption."  *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993).  The comments must be "(1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision."  *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015).  As a result, the court must ask whether the "evidence, truly standing alone, is sufficient to support the conclusion that a nexus exists between the protected activity and the adverse

-9-

employment action." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 416 (5th Cir. 2003), *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 328 (5th Cir. 2010).

Reaves' comment, on its own, does not constitute direct evidence of discrimination. Muller voiced several different concerns to his superiors that clearly did not constitute protected activity. For example, Muller told Wheeless that no one respects Skipper Smith, another team leader at the plant. (Def.'s Mot. Ex. A at 140, ECF No. 88-1.) He also told Plant Manager Budney that employees at the plant do not trust Wheeless and Smith. (*Id.* at 150.) Since Reaves did not say why he considered Muller "a whiner," it is unclear whether Reaves' comment was related to Muller's alleged complaints of gender discrimination. Therefore, the comment can only support a claim for retaliation when coupled with an inference that Reaves was referring to Muller's alleged complaints of gender discrimination. The comment does not constitute direct evidence of retaliation.

### B. McDonnell Douglas Framework

The Court must next analyze Muller's retaliation claim under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

> Under *McDonnell Douglas*, "(1) the employee must demonstrate a prima facie case of retaliation; (2) the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and (3) if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation."

*Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014) (quoting *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)). To demonstrate a prima facie case of discrimination, Muller must establish that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019).

Mississippi Power argues that Muller has not stated a prima facie retaliation claim because he did not engage in protected activity. An employee has engaged in protected activity if he has: (1) "opposed any practice made an unlawful employment practice" by Title VII, or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). Muller's claim is based on the opposition clause,[6] which requires a plaintiff to demonstrate that he "had at least a 'reasonable belief' that the practices [he] opposed were unlawful." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981)). The Fifth Circuit "ha[s] consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) (quoting *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011)).

---

[6] The participation clause does not apply where, as here, the plaintiff did not file a charge with the EEOC until after the alleged retaliatory discharge occurred. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000).

-11-

Muller has failed to show that a reasonable person could have believed that the incidents he opposed violated Title VII. First, Muller admits that Cumbest was not subjected to an adverse employment action when she was required to perform a walk-down. (Def.'s Mot. Ex. A, at 94-95, ECF No. 88-1.) Cumbest successfully completed the walk-down, and she suffered no demotion or punishment. (Def.'s Mot. Ex. G, at 52, ECF No. 88-7.) Second, Muller admits that Fayard suffered no adverse employment action when she was told she needed to provide a statement from her physician regarding whether she could return to work. Fayard lost no pay or benefits concerning this incident, and she was permitted to work without a physician's statement. (Def.'s Mot. Ex. A, at 80-81, ECF No. 88-1.) Muller also agrees that the policy of requiring a physician statement was the standard operating procedure at the plant. (*Id.* at 81-82.)

As for the third incident, Muller concedes that the gypsum overflow occurred before he transferred to the plant, and thus, he has no personal knowledge regarding the overflow incident. (*Id.* at 107.) He also has no personal knowledge regarding the separate spill in which no employees were disciplined. (*Id.*) In addition, it is undisputed that both males and females on Crew E were punished for the gypsum overflow incident. Therefore, it was unreasonable for Muller to cite Mississippi Power's response to the overflow and the spill as an instance of gender discrimination. Concerning the fourth incident, Muller admits that the decision to remove Fayard from the substitute team leader list was made before he transferred to the plant. (Def.'s Mot. Ex. A, at 86, ECF No. 88-1.) He does not know which

manager made the decision or when the decision was made, but he was told that she was removed due to sick leave usage and some other performance issues. (*Id.* at 85-87.) Given Muller's admitted lack of personal knowledge regarding this decision, it was unreasonable for him to believe that the decision constituted gender discrimination. In addition, sick leave usage and performance issues are not discriminatory reasons for removing Fayard from the list. Since Muller has not shown that a reasonable person could have believed that any of these incidents constituted violations of Title VII, he has failed to establish a prima facie case of retaliation. It is not necessary for the Court to consider the remainder of the *McDonnell Douglas* analysis. Muller's retaliation claim must therefore be dismissed.

## II. Age Discrimination

The Age Discrimination in Employment Act (ADEA) makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the but-for cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (internal quotation marks and brackets omitted). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Kilgore v. Brookeland*

*Indep. Sch. Dist.*, 538 F. App'x 473, 475 (5th Cir. 2013) (*Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). In addition, the comment must be: "1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." *Moss*, 610 F.3d at 929; *see also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).

Muller argues that the July 18, 2017 email exchange between Mississippi Power Employee Relations Manager Norman Collins and Vide President Allen constituted direct evidence of age discrimination, because Collins' initial email informed Reaves of Muller's birth date, including a notation that Muller would turn 62 in September. (Pl.'s Resp. Ex. 14, ECF No. 90-14.) When Reaves responded that Muller had taken a lot of vacation time, Collins stated, "Typical of a lot of the folks at the plants. I really think he's been unhappy with the move and has been thinking retirement for a while." (*Id.*)

The email exchange does not constitute direct evidence of age discrimination. Collins testified that the exchange occurred after the decision had been made to terminate Muller, and Muller does not dispute that Reaves had told Compliance Officer Vicki Pierce that Muller needed to be fired almost one week prior to the email exchange. (*See* Pl.'s Resp. Def.'s Mot., Ex. 7, at 41, 45-46, and MPC 000082, ECF No. 88-10.) Furthermore, the vague email exchange does not support a finding of discrimination without inference. The explanation for the exchange given by Collins and Reaves — that they were discussing whether Mississippi Power should

offer Muller additional vacation time that would bridge the short gap until he reached the retirement age of 62 — is a reasonable explanation that would not support an age discrimination claim. The Fifth Circuit has consistently held that discussions regarding retirement do not necessarily evidence age discrimination but may constitute a "reasonable inquiry into [the employee's] future plans." *Ng-A-Mann v. Sears, Roebuck & Co.*, 627 F. App'x 339, 342 (5th Cir. 2015); *see also E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (finding personnel director's comment that "it's just that you've reached that age and years of service that we can bridge you to retirement" was "simply recogniz[ing] a fact concerning [the employee's] seniority" and did not "demonstrate age bias" or "imply seniority was the reason for discharge"); *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 818 (5th Cir. 1993) (a supervisor's questions about age and retirement plans of current employees were reasonable inquiries that did not evidence discriminatory animus). Muller has not produced direct evidence of age discrimination.

The Court must next consider Muller's age discrimination claim pursuant to the *McDonnell Douglas* framework.

> Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age. . . . If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination.

*Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). If the employer meets its burden, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination. *Id.*

The parties agree that Muller has established a prima facie case for discrimination. In addition, Mississippi Power has provided a legitimate, nondiscriminatory reason for termination. First, it determined that Muller breached confidentiality by disclosing what occurred in a management meeting to one or more employees of the plant. Mississippi Power also has produced testimony that Muller was loud, angry, and disrespectful toward management when he was confronted about the breach of confidentiality.

Muller relies on the email exchange between Collins and Reaves to support his argument that Mississippi Power's cited reasons for termination are pretext for age discrimination. When a plaintiff relies on workplace comments as circumstantial evidence of pretext, he must show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *Reed*, 701 F.3d at 441. The record and Mississippi Power's discovery responses reflect that both Collins and Reaves were involved to some degree in the decision to terminate Muller. However, the emails do not indicate age animus. As Muller repeatedly acknowledges, Reaves decided to terminate Muller

on July 12, 2017, the date on which Reaves called Muller "a whiner." The email exchange between Collins and Reaves occurred six days later.

Furthermore, the emails do not provide evidence of discriminatory animus, because they contained no negative references to Muller's age. Casual, facially-neutral remarks like those included in the email exchange do not provide evidence of age discrimination. *See, e.g., Tex. Instruments Inc.*, 100 F.3d at 1181; *Moore v. Eli Lilly & Co.*, 990 F.2d at 818. Finally, the email exchange is too vague to constitute circumstantial evidence of age discrimination. As a result, Muller has not presented any evidence that Mississippi Power's reason for terminating him was pretext for age discrimination. Mississippi Power is entitled to summary judgment as to Muller's age discrimination claim.

### III. Failure to Mitigate Damages and Damages for Emotional Distress

Since the Court has found that Mississippi Power is entitled to summary judgment as to both of Muller's substantive claims, it is not necessary to address Mississippi Power's arguments concerning damages that Muller would be able to recover.

### IV. Motions to Strike

Muller has filed two Motions to Strike concerning statements and testimony given by Fayard regarding whether she believed she was subjected to gender discrimination. Fayard's opinions regarding whether she was subjected to gender discrimination are irrelevant to the present Motion, and the Court did not consider

or rely on her statements while deciding Mississippi Power's Motion for Summary Judgment. Therefore, Muller's Motions to Strike are moot.

## CONCLUSION

For the foregoing reasons, Mississippi Power is entitled to summary judgment as to Muller's retaliation and age discrimination claims. Muller's Motions to Strike are moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [88] Motion for Summary Judgment filed by the defendant, Mississippi Power Company, is **GRANTED**. Mark Muller's lawsuit against Mississippi Power is **DISMISSED WITH PREJUDICE**. The Court will enter a separate judgment pursuant to Fed. R. Civ. P. 58.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the [92] Motion to Strike Exhibit M filed by Muller and the [100] Motion to Strike Third Declaration of Wendy Fayard filed by Muller are **MOOT**.

**SO ORDERED AND ADJUDGED** this the 1st day of May, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE